## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH

| | |
|---|---|
| **ALYSSA BONHAM and KYRA MOHR**, *individually, and on behalf of all others similarly situated,*<br><br>Plaintiffs,<br><br>v.<br><br>**INSTRUCTURE, INC.**,<br><br>Defendant. | Case No. 2:26-cv-00448<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

Plaintiffs Alyssa Bonham and Kyra Mohr ("Plaintiffs"), individually, and on behalf of all others similarly situated, bring this action against Defendant Instructure, Inc. ("Instructure" or "Defendant"), seeking monetary damages, restitution, and/or injunctive relief for the proposed Class, as defined below. Plaintiffs make the following allegations upon information and belief, the investigation of counsel, and personal knowledge or facts that are a matter of public record.

### I.    INTRODUCTION

1.    The release, disclosure, and publication of sensitive, private data can be devastating. Not only is it an intrusion of privacy and a loss of control, but it is a harbinger of identity theft: for victims of a data breach, the risk of identity theft more than quadruples.[1] A data breach can have grave consequences for victims for years after the actual date of the breach—with the obtained information, thieves can wreak many forms of havoc: open new financial accounts, take out loans, obtain medical services, obtain government benefits, and/or obtain driver's licenses in the victims' names, forcing victims to maintain a constant vigilance over the potential misuse of their information.

2.    Instructure, Inc., based in Salt Lake City, markets itself as "champions of open edtech. The makers of Canvas, Mastery, and Parchment (solutions for learning, assessment, and

---

[1] Dave Maxwell & Bill Latham, *Data Breaches: Perspectives from Both Sides of the Wall*, 25 S.C. Lawyer 28-35 (May 2014), https://www.mydigitalpublication.com/publication/?i=208503 (last visited May 14, 2026).

credentialing). Host of the world's largest online community of educators."[2] "Canvas is the #1 LMS [Learning Management System] in the world and has a global community of educators and partners working together to create life-changing learning experiences."[3] "Canvas is used to manage grades, course notes, assignments, lecture videos and more."[4]

3.     Canvas is used to deliver courses to 41% of higher education institutions in North America and serves around 200 million learners across more than 100 countries.[5]

4.     On April 29, 2026, Instructure detected unauthorized activity on Canvas (the "Data Breach").[6] On May 1, 2026, Instructure confirmed that it "experienced a cybersecurity incident perpetrated by a criminal threat actor."[7]

5.     Shortly after, the extortion group ShinyHunters claimed responsibility for the attack on its data leak site, claiming "[n]early 9,000 schools worldwide affected. 275 million individuals data ranging from students, teachers, and other staff containing PII."[8] ShinyHunters claimed "[s]everal billions of private messages among students and teachers and students and other students involved, containing personal conversations and other PII. Your Salesforce instance was also breached and a lot more other data is involved."[9]

---

[2] https://www.instructure.com/about/llm-info#:~:text=We%20build%20industry%2Dleading%20edtech,Canvas (last visited May 13, 2026).

[3] *Id.*

[4] https://www.cbsnews.com/news/cyberattack-shutters-canvas-learning-platform-for-schools-across-us/ (last visited May 14, 2026).

[5] https://thenextweb.com/news/the-largest-education-data-breach-in-history-was-not-an-attack-on-a-school-it-was-an-attack-on-a-vendor (last visited May 14, 2026).

[6] https://www.instructure.com/incident_update (last visited May 14, 2026).

[7] *See* https://socradar.io/blog/shinyhunters-breach-instructure-students-teachers/ (last visited May 14, 2026); https://www.umass.edu/it/instructure-incident (last visited May 14, 2026).

[8] https://www.bleepingcomputer.com/news/security/instructure-confirms-data-breach-shinyhunters-claims-attack/ (last visited May 14, 2026).

[9] *Id.*

6.    In addition to claiming responsibility for the Data Breach, ShinyHunter's message reportedly came with a link to a text file containing a list of thousands of schools it claimed were affected by the breach and a ransom threat and a threat to release the stolen data.[10] The ransom gave Instructure until May 12, 2026 to reach out for settlement.[11] Samples of the stolen data, reportedly provided by ShinyHunters, included names, private messages, email addresses, student ID numbers, and phone numbers.[12]

7.    On May 6, 2026, Instructure provided an update, stating that Canvas was fully operational and that the incident was contained.[13] "However, by mid-day on Thursday, May 7, students and faculty at dozens of schools and universities were flooding social media sites with

---

[10] https://time.com/article/2026/05/08/canvas-cyber-attack-shinyhunters-hack-what-to-know/ (last visited May 14, 2026).

[11] *Id.*

[12] https://www.msn.com/en-us/money/other/hackers-steal-students-data-during-breach-at-education-tech-giant-instructure/ar-AA22rKmg?ocid=BingNewsSerp (last visited May 14, 2026); https://www.dataminr.com/resources/intel-brief/shinyhunters-claims-instructure-canvas-breach/#:~:text=ShinyHunters%20group%20subsequently%20claimed%20responsibility,educati onal%20and%20corporate%20institutions%20globally (last visited May 14, 2026).

[13] https://krebsonsecurity.com/2026/05/canvas-breach-disrupts-schools-colleges-nationwide/ (last visited May 15, 2026).

comments saying that a ransom demand from ShinyHunters had replaced the usual Canvas login page" ("Second Breach").[14] The May 7, 2026 ransom stated the following:

> ShinyHunters has breached Instructure (again). Instead of contacing us to resulve it they ignored us and did some "security patches."
>
> If any of the schools in the affected list are interested in preventing the relase of their data, pelase consult with a cyber advisory firm and contact us privately at TOX to negotiate a settlement. You have till the end of the day by 12 May 2026 before everything is leaked.
>
> Instructure still has until EOD 12 May 2026 to contact us.[15]

8.      Instructure responded by pulling Canvas offline.[16] The Second Breach coincided with finals season across many U.S. schools and universities, exacerbating an already stressful period for students and teachers.[17] On May 11, 2026, Instructure stated it had reached an "agreement" with "the unauthorized actor" to supposedly prevent the publication of the data from the Data Breach.[18] In other words, Instructure paid a ransom to ShinyHunters even though the FBI recommends victims not make such payments since, of course, criminals who perpetrate such crimes cannot be trusted to honor any subsequent "agreement."[19]

9.      This is not the first time Instructure has been hacked by ShinyHunters. Less than a year ago, in September 2025, ShinyHunters claimed responsibility for a social engineering attack on  Instructure's systems.[20] As such, Instructure was well aware of the risk of these kinds of targeted attacks and should have been prepared.

---

[14] *Id.*

[15] *Id.*

[16] *Id.*

[17] https://time.com/article/2026/05/08/canvas-cyber-attack-shinyhunters-hack-what-to-know/ (last visited May 15, 2026).

[18] https://www.instructure.com/incident_update?_gl=1*1mxuuwx*_gcl_au*MTI0NjA2NzM0 MS4xNzc3OTg4Mzgx*_ga*MTk0OTM3NjAzMy4xNzc3OTg4Mzgx*_ga_75H5134F9J*czE3 NzgyNDM4ODAkbzYkZzEkdDE3NzgyNDM5MDEkajM5JGwxJGg1MjI3MzI5OTY (last visited May 15, 2026).

[19] *See* https://www.fbi.gov/how-we-can-help-you/scams-and-safety/common-frauds-and-scams/ransomware (last visited May 15, 2026).

[20] https://cipherssecurity.com/instructure-canvas-security-incident-2026/ (last visited May 14, 2026).

10.    Despite knowing how valuable customer information is, Defendant failed to adequately protect Plaintiffs' and Class Members' PII. This PII was compromised due to Defendant's negligent and/or careless acts and omissions and its utter failure to protect customers' sensitive data. Hackers targeted and obtained Plaintiff's and Class Members' PII because of the value in exploiting and stealing the identities of Plaintiffs and Class Members. The present and continuing risk to victims of the Data Breach will remain for their respective lifetimes.

11.    As a result of the Data Breach, through which their Personally Identifiable Information ("PII") was compromised, disclosed, and obtained by an unauthorized criminal hacking group, Plaintiffs and Class Members have suffered concrete damages and are now exposed to a heightened and imminent risk of fraud and identity theft for a period of years, if not decades. Furthermore, Plaintiffs and Class Members must now and in the future closely monitor their financial accounts to guard against identity theft, at their own expense. Consequently, Plaintiffs and the other Class Members will incur ongoing out-of-pocket costs for, e.g., purchasing credit monitoring services, credit freezes, credit reports, or other protective measures to deter and detect identity theft.

12.    By this Complaint, Plaintiffs seek to remedy these harms on behalf of themselves, and all similarly situated individuals whose PII was accessed during the Data Breach.

## II.    JURISDICTION, VENUE, AND CHOICE OF LAW

13.    This Court has subject matter jurisdiction for this action pursuant to 28 U.S.C. § 1332(d)(2)(A), as modified by the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1711, *et seq.*, because at least one member of the Class, as defined below, is a citizen of a different state than Defendant, there are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs. This Court also has diversity jurisdiction over this action pursuant to 28 U.S.C. § 1332(a). This Court has supplemental jurisdiction over any state law claims pursuant to 28 U.S.C. § 1367.

14.    The Court has jurisdiction over Defendant because it maintains its principal place of business in this District, has sufficient minimum contacts with this District, and has purposefully

availed itself of the privilege of doing business in this District such that it could reasonably foresee litigation being brought in this District.

15.    Venue is proper in this District under 28 U.S.C. § 1391(a) through (d) because Defendant's principal place of business is located in this District and a substantial part of the events or omissions giving rise to the claims occurred in, was directed to, and/or emanated from this District.

## III.    PARTIES

### A.    Plaintiff Alyssa Bonham

16.    Plaintiff Alyssa Bonham is a resident of Seattle, Washington.

17.    Plaintiff Bonham is required to use Canvas as a student at the University of Washington and used Canvas before, during, and after the Data Breach.

**UW Information Technology**

This message is being sent to all students across the University of Washington with the approval of the VP and CIO for UWIT.

Good afternoon,

UW Information Technology learned today at 1 p.m. that Canvas, which is used for UW online learning, is experiencing a nationwide outage due to an apparent security incident. Canvas is fully inaccessible to all users at this time.

Users cannot access Canvas to submit assignments, message instructors or students, or access course content.

Other educational technology tools, such as Panopto, Gradescope, and Poll Everywhere, will not be directly accessible through Canvas and will have limited availability at this time.

**Faculty, instructors and teaching assistants are also being made aware of the outage. Please check with them directly and watch for any messages from them about adjustments or accommodations that may be needed as a result of this outage.**

At this time, we do not know when service will be restored.

We will post updates at UWIT's Service Status website — where you can subscribe to receive email updates.

UW Information Technology

18.     On May 7, 2026, Plaintiff Bonham received an email from University of Washington ("UW") Information Technology ("IT") stating that Canvas is experiencing a nationwide outage due to an apparent security incident and that Canvas was inaccessible.

19.     UW Canvas access was not restored until May 9, 2026.

**B.     Plaintiff Kyra Mohr**

20.     Plaintiff Kyra Mohr is a resident of Seattle, Washington.

21.     Plaintiff Mohr is required to use Canvas as a student at the University of Washington and used Canvas before, during, and after the Data Breach.

22.     On May 7, 2026, Plaintiff Mohr received an email from UW IT stating that Canvas is experiencing a nationwide outage due to an apparent security incident and that Canvas was inaccessible.

23.     UW Canvas access was not restored until May 9, 2026.

**C.     Defendant Instructure, Inc.**

24.     Defendant Instructure, Inc. is a Delaware corporation with its principal place of business located at 6300 South 3000 East, Suite 700, Salt Lake City, Utah 84121.

25.     In the course of its business, Instructure collects the PII of Canvas users, directly through the user or through the educational institution with which the user is associated, as a requirement for receiving products and services. The PII Instructure collects from its users includes full names, gender or preferred pronouns, emails, academic institution, usernames and passwords, geographic information, profile/bio information, phone numbers, payment card information, student ID numbers, application messages or discussion group comments, research papers and class assignments, video images, and voice recordings.[21]

## IV.     FACTUAL BACKGROUND

**A.     Instructure Failed to Adequately Protect Client Data, Resulting in the Data Breach.**

26.     Instructure's Product Privacy Notice states, "Instructure is committed to protecting the information we process by doing our best to ensure that the information is used only to support

---

[21] https://www.instructure.com/policies/product-privacy-policy (last visited May 14, 2026).

students and education."[22] It claims to be guided by the following Privacy Principles: (1) Transparency – "[w]e will work to ensure transparent data processing in our business"; (2) Accountability – "[w]e will demonstrate our commitment to privacy in concrete and tangible ways"; (3) Integrity – "[w]e will strive to ensure that the data entrusted to us is complete, consistent, and accurate"; (4) Security – "[w]e will supplement and maintain appropriate technical, administrative, and organizational measures to protect data in accordance with regulatory requirements"; and (5) Confidentiality – "[w]e will establish and maintain policies, procedures, and practices that limit access to data and protect against unlawful or unintentional access or disclosure."[23]

27.     Instructure claims to be "committed to protecting the privacy of students, educators, and institutions" as a signatory to the Student Privacy Pledge – a statement by edtech companies to safeguard student privacy, built around a dozen privacy commitments, and as a member of the Future of Privacy Forum.[24]

28.     Notwithstanding these extensive promises, in late April and early May 2026, Instructure experienced two data breaches affecting millions of students in the United States. ShinyHunters gained access to Plaintiffs' and Class Members' PII with the intent of selling, marketing, and misusing this PII.

29.     As of the date of this Complaint, most affected students have not been notified that their PII was compromised in the Data Breach.

30.     Plaintiffs and Class Members were required to provide their PII to Defendant, through their school districts, universities or colleges, in order to receive education services. Often, a Canvas account is required for a student to be enrolled in an educational institution. Defendant created, collected, and stored Plaintiffs' and Class Members' PII while Plaintiffs had the reasonable expectation and mutual understanding that Defendant, and all third-party educational

---

[22] *Id.*

[23] *Id.*

[24] *Id.*

institutions, would comply with its obligations to keep such information confidential and secure from unauthorized access.

31.     Despite this, Plaintiffs and Class Members remain in the dark regarding what specific PII was stolen, the malware used, and the steps taken to secure their PII moving forward.

32.     Defendant was familiar with its obligations – created by contract, industry standards, common law, and representations to its customers – to protect customer and student information. Plaintiffs and Class Members provided their PII to Instructure with the reasonable expectation that Defendant would comply with its obligations related to their PII. Defendant owed Plaintiffs and Class Members a duty to provide reasonable security, consistent with industry standards and requirements, and to ensure that its computer systems, networks, and protocols adequately protected their PII. Despite these duties, Instructure did not secure its impacted systems with basic protections.

33.     Defendant failed to comply with its obligations, resulting in the Data Breach and Class Members now face years of constant surveillance of their financial and personal records.

**B.      Defendant Failed to Comply with FTC Guidelines.**

34.     Defendant is prohibited by the Federal Trade Commission Act (the "FTC Act") (15 U.S.C. § 45) from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission (the "FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act. *See, e.g., FTC v. Wyndham Worldwide Corp.*, 799 F.3d 236 (3d Cir. 2015).

35.     The FTC has promulgated numerous guides for businesses which highlight the importance of implementing reasonable data security practices. According to the FTC, the need for data security should be factored into all business decision-making.

36.     In 2016, the FTC updated its publication, Protecting Personal Information: A Guide for Business, which established cyber-security guidelines for businesses. The guidelines note that businesses should protect the personal customer information that they keep; properly dispose of

personal information that is no longer needed; encrypt information stored on computer networks; understand their network's vulnerabilities; and implement policies to correct any security problems.[25] The guidelines also recommend that businesses use an intrusion detection system to expose a breach as soon as it occurs; monitor all incoming traffic for activity indicating someone is attempting to hack the system; watch for large amounts of data being transmitted from the system; and have a response plan ready in the event of a breach.[26]

37.    The FTC further recommends that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.

38.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

39.    Defendant failed to properly implement basic data security practices, allowing for this attack to occur, victimizing hundreds of millions of people.

40.    Defendant's failure to employ reasonable and appropriate measures to protect against unauthorized access to consumers' PII constitutes an unfair act or practice prohibited by Section 5 of the FTC Act, 15 U.S.C. § 45.

41.    Defendant was at all times fully aware of the obligation to protect the PII of consumers. Defendant was also aware of the significant repercussions that would result from its failure to do so.

---

[25] *Protecting Personal Information: A Guide for Business*, FEDERAL TRADE COMMISSION (Oct. 2016), https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business-0 (last visited May 14, 2026).

[26] *Id.*

42.    Cyberattacks have become so notorious that the FBI and U.S. Secret Service have issued a warning to potential targets, so they are aware of, and prepared for, a potential attack.  The FBI, FTC, GAO, U.S. Secret Service, United States Cybersecurity and Infrastructure Security Agency, State Attorney General Offices and many other government and law enforcement agencies, and hundreds of private cybersecurity and threat intelligence firms, have issued warnings that put Defendant on notice, long before the Data Breach, that 1) cybercriminals are targeting large, public companies such as Defendant Instructure; 2) cybercriminals were ferociously aggressive in their pursuit of large collections of PII like that in possession of Defendant; 3) cybercriminals were selling large volumes of PII and corporate information on Dark Web portals; and 4) the threats were increasing.

43.    Had Defendant been diligent and responsible, it would have known about and acted upon warnings published in 2017 that 93% of data security breaches were avoidable and the key avoidable causes for data security incidents are:

a)  Lack of complete assessment, including internal, third-party, and cloud-based systems and services;

b)  Not promptly patching known/public vulnerabilities, and not having a way to process vulnerability reports;

c)  Misconfigured devices/servers;

d)  Unencrypted data and/or poor encryption key management and safeguarding;

e)  Use of end-of-life (and thereby unsupported) devices, operating systems and applications;

f)  Employee errors and accidental disclosures — lost data, files, drives, devices, computers, improper disposal;

g)  Failure to block malicious email; and

h)  Users succumbing to business email compromise (BEC) and social exploits. [27]

---

[27] Gretel Egan, *OTA Report Indicates 93% of Security Breaches Are Preventable*, PROOFPOINT (Feb. 7, 2018), available at https://www.proofpoint.com/us/blog/security-awareness-training/ota-report-indicates-93-security-breaches-are-preventable (last visited May 14, 2026).

**C.      Defendant is Subject to FERPA and COPPA.**

44.      The Family Educational Rights and Privacy Act ("FERPA") and its regulations require institutions in possession of education records to maintain reasonable security practices to protect such records from unauthorized disclosure.[28] A record counts as an education record under FERPA, when (1) the information is directly related to a student and (2) it is maintained by an educational agency or institution, or by a party acting on the school's behalf.[29]

45.      Further, Instructure is subject to the Children's Online Privacy Protection Act ("COPPA"). Instructure maintains a COPPA Privacy Policy.[30]

46.      COPPA was enacted because of public concern that operators of online services and websites were tracking children's acts online. The statute is intended to "maintain the security of personally identifiable information of children collected online" and "protect children's privacy by limiting the collection of personal information from children without parental consent."[31]

47.      COPPA "prohibits unfair . . . acts or practices in connection with the collection, use, and/or disclosure of personal information from and about children on the Internet."[32] The statute applies to any operator of a commercial website or online service directed to children under 13 years of age that collects, uses, and/or discloses children's personal information. It also states that "[w]ebsite or online service directed to children means a commercial website or online service, or portion thereof, that is targeted to children." 16 C.F.R. § 312.2.

48.      COPPA's standards and requirements correspond to, and have helped influence, current and established societal norms for respecting and protecting children's privacy interests.

49.      COPPA defines personal information "as individually identifiable information about an individual collected online." 15 U.S.C. § 6501(8).

---

[28] Responsibilities of Third-Party Service Providers under FERPA, PRIVACY TECHNICAL ASSISTANCE CENTER (Aug. 2015), https://studentprivacy.ed.gov/sites/default/files/resource_document/file/Vendor%20FAQ.pdf.

[29] https://legalclarity.org/what-is-an-education-record-under-ferpa/ (last visited May 14, 2026).

[30] https://www.instructure.com/policies/coppa-privacy (last visited May 14, 2026).

[31] 144 Cong. Rec. S12787 (daily ed. Oct. 21, 1998) (statement of Sen. Bryan).

[32] 16 C.F.R. § 312.1.

50.     Due to the highly sensitive nature of the information Instructure acquired and stored, and the age of many of its customers, Instructure knew or reasonably should have known its obligation to comply with industry standards related to data security and laws protecting the PII of students and minors.

**D.      The Data Breach Puts Consumers at Increased Risk of Fraud and Identity Theft.**

51.     An identity thief uses victims' PII, such as names, phone numbers, and other sensitive and confidential information, without permission, to commit fraud or other crimes that range from immigration fraud, obtaining a driver's license or identification card, obtaining government benefits, and filing fraudulent tax returns to obtain tax refunds.

52.     Identity thieves can use a victim's PII to open new financial accounts, incur charges in the victim's name, take out loans in the victim's name, and incur charges on existing accounts of the victim. Plaintiffs' finances are now at risk due to the Data Breach.

53.     Identity theft is the most common consequence of a data breach—it occurs to 65% of data breach victims.[33] Consumers lost more than $56 billion to identity theft and fraud in 2020, and over 75% of identity theft victims reported emotional distress.[34]

54.     Plaintiffs and members of the Class are now in the position of having to take steps to mitigate the damages caused by the Data Breach. Once use of compromised non-financial PII is detected, the emotional and economic consequences to the victims are significant. Studies carried out by the ID Theft Resource Center, a non-profit organization, found that victims of identity theft had marked increased fear for personal financial security. The report attributes this to more people having been victims before, contributing to greater awareness and understanding that they may suffer long term consequences from this type of crime.[35]

---

[33] Eugene Bekker, *What Are Your Odds of Getting Your Identity Stolen?*, IDENTITYFORCE (Apr. 15, 2021), https://www.identityforce.com/blog/identity-theft-odds-identity-theft-statistics (last visited May 14, 2026).

[34] *Id.*

[35] Identity Theft: The Aftermath 2013, Identity Theft Resource Center, https://www.idtheftcenter.org/wp-content/uploads/2021/09/Aftermath2013.pdf (last visited May 14, 2026).

55.     Defendant failed to protect and safeguard Plaintiffs' and Class Members' PII, in fact failing to adhere to even its most basic obligations. As a result, Plaintiffs and Class Members have suffered or will suffer actual injury, including loss of privacy, costs, and loss of time.

## V.     CLASS ACTION ALLEGATIONS

56.     Plaintiffs bring this action as a class action under Rule 23 of the Federal Rules of Civil Procedure, on behalf of a proposed nationwide class (the "Class"), defined as:

> All natural persons in the United States whose Personally Identifiable Information was compromised as a result of the Data Breach.

57.     In addition, the State Subclass is defined as follows:

> **Washington Subclass:** All natural persons in the State of Washington whose Personally Identifiable Information was compromised as a result of the Data Breach.

58.     Excluded from the Class are Defendant, any entity in which a Defendant has a controlling interest, any of the officers or directors of Defendant, the legal representatives, heirs, successors, and assigns of Defendant, and any Judge to whom this case is assigned, and his or her immediate family.

59.     The definition of the Class may be further modified or amended by additional pleadings, evidentiary hearings, a class certification hearing, and orders of this Court.

60.     **Numerosity and Ascertainability:** Plaintiffs do not know the exact size of the Class or identity of the Class Members, since such information is in the exclusive control of Defendant. Nevertheless, the Class encompasses at least millions of individuals dispersed throughout the United States. The number of Class Members is so numerous that joinder of all Class Members is impracticable. The names, addresses, and phone numbers of Class Members are identifiable through documents maintained by Defendant.

61.     **Commonality and Predominance:** This action involves common questions of law and fact which predominate over any question solely affecting individual Class Members. These common questions include:

a)  whether Defendant engaged in the conduct alleged herein;

b) whether Defendant had a legal duty to use reasonable security measures to protect Plaintiffs' and Class Members' PII;

c) whether Defendant's failure to implement effective security measures to protect Class Members' PII was negligent;

d) whether Defendant timely informed Plaintiffs of the Data Breach;

e) whether Plaintiffs and Class Members are entitled to injunctive relief; and

f) whether, as a result of Defendant's conduct, Plaintiffs and the Class are entitled to damages and equitable relief.

62.     **Typicality:** Plaintiffs' claims are typical of the other Class Members' claims because all Class Members were comparably injured through Defendant's substantially uniform misconduct, as described above. Plaintiffs are advancing the same claims and legal theories on behalf of themselves and all other members of the Class that they represent, and there are no defenses that are unique to Plaintiffs. The claims of Plaintiffs and Class Members arise from the same operative facts and are based on the same legal theories.

63.     **Adequacy:** Plaintiffs are adequate Class representatives because their interests do not conflict with the interests of the other members of the Class they seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; and Plaintiffs intend to prosecute this action vigorously. The Class's interest will be fairly and adequately protected by Plaintiffs and their counsel.

64.     **Superiority:** A class action is superior to any other available means for the fair and efficient adjudication of this controversy, and no unusual difficulties are likely to be encountered in the management of this class action. The damages and other detriment suffered by Plaintiffs and other Class Members are relatively small compared to the burden and expense that would be required to individually litigate their claims against Defendant, so it would be virtually impossible for the Class Members to individually seek redress for Defendant's wrongful conduct. Even if Class Members could afford individual litigation, the court system could not: individualized litigation creates a potential for inconsistent or contradictory judgments, increases the delay and expense to the parties, and increases the expense and burden to the court system. By contrast, the

class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by this Court.

## VI.   CAUSES OF ACTION

### A.   Claims Brought on Behalf of the Nationwide Class

#### COUNT ONE
#### NEGLIGENCE

65.   Plaintiffs incorporate paragraphs 1 through 64, as if fully set forth herein.

66.   Defendant owed Plaintiffs and Class Members a duty to exercise reasonable care in safeguarding their personal information, arising from the sensitivity of the information, the expectation the information was going to be kept private, and the foreseeability of its data safety shortcomings resulting in a breach. This duty included designing, implementing, maintaining, monitoring, and testing Defendant's protocols, policies, procedures, practices, networks, and systems to ensure Class Member information was sufficiently secure.

67.   Defendant owed a duty to Plaintiffs and Class Members to implement administrative, physical and technical safeguards, such as intrusion detection processes that detect data breaches in a timely manner, to protect and secure Plaintiffs' and Class Members' PII. Defendant owed a duty to provide industry standard data security measures. Defendant owed a duty under Section 5 of the Federal Trade Commission Act ("FTCA"), 15 U.S.C. § 45, which prohibits the unfair practice of insufficient and unreasonable data protection measures. Defendant also owed a duty to Plaintiffs and Class Members pursuant to FERPA and COPPA.

68.   Defendant owed a duty to disclose the material fact that its data security practices were inadequate to safeguard Plaintiffs' and Class Members' PII.

69.   Defendant also had independent duties under Plaintiffs' and Class Members' state laws that require Defendant to reasonably protect Plaintiffs' and Class Members' PII and promptly notify them about the breach.

70.   Defendant and the Class entered into a special relationship when the Class members entrusted Defendant to protect their PII, which provided an independent duty of care. Plaintiffs'

16

and Class Members' willingness to entrust Defendant with their PII was predicated on the understanding that Defendant would take adequate security precautions. Defendant was capable of protecting its networks and systems, and the PII it stored on them, from unauthorized access.

71.     Defendant breached its duties by, among other things: (a) failing to implement and maintain adequate data security practices to safeguard Plaintiffs' and Class Members' PII, including administrative, physical, and technical safeguards; (b) failing to detect the Data Breach in a timely manner; and (c) failing to disclose that its data security practices were inadequate to safeguard Plaintiffs' and Class Members' PII.

72.     Plaintiffs and Class Members were probable and foreseeable victims of Defendant's inadequate data security. Defendant knew, or should have known, of the risk of collecting and storing Plaintiffs' and Class Members' PII and the need for providing appropriate safeguards.

73.     The harm to Plaintiffs and Class Members was a proximate, reasonably foreseeable result of Defendant's breaches of aforementioned duties.

74.     Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

**COUNT TWO**
**NEGLIGENCE PER SE**

75.     Plaintiffs incorporate paragraphs 1 through 64, as if fully set forth herein.

76.     Under the FTC Act, 15 U.S.C. § 45, FERPA, and COPPA, Defendant had a duty to provide fair and adequate data security practices to safeguard Plaintiffs' and Class Members' PII.

77.     Under state data security statutes, Defendant had a duty to implement and maintain reasonable security procedures and practices to safeguard Plaintiffs' and Class Members' PII.

78.     Plaintiffs and Class Members were foreseeable victims of Defendant's violations of the FTCA, FERPA, COPPA, and state data security statutes. Defendant knew or should have known that its failure to implement reasonable security measures would cause damage to Plaintiffs and Class Members.

79.    Defendant's failure to comply with applicable law constitutes negligence per se.

80.    But for Defendant's violations of law, Plaintiffs' and Class Members' PII would not have been accessed by unauthorized parties.

81.    Due to Defendant's violations of law, Plaintiffs and Class Members suffered injury of the type contemplated by these laws, including but not limited to the exposure to a heightened and imminent risk of fraud, identity theft, financial and other harm. Plaintiffs and Class Members must monitor their financial accounts and credit histories more closely and frequently to guard against identity theft. Plaintiffs and Class Members also have incurred, and will continue to incur on an indefinite basis, out-of-pocket costs for obtaining credit reports, credit freezes, credit monitoring, and other protective measures to detect or deter identity theft. The unauthorized acquisition of Plaintiffs' and Class Members' PII has also diminished the value of their PII.

82.    The harm to Plaintiffs and Class Members was a proximate, reasonably foreseeable result of Defendant's breaches of applicable law.

83.    Therefore, Plaintiffs and Class Members are entitled to damages in an amount to be proven at trial.

## COUNT THREE
## BREACH OF IMPLIED CONTRACTS

84.    Plaintiffs incorporate paragraphs 1 through 64, as if fully set forth herein.

85.    Plaintiffs and Class Members were required to provide their PII to obtain education services from Defendant's clients, schools, colleges, and universities. Plaintiffs and Class Members entrusted their PII to Defendant, through their education providers, in order to obtain services from them.

86.    By providing Defendant with their PII, and Defendant's acceptance of this information, Plaintiffs and Class Members on one hand, and Defendant on the other, entered into implied contracts for the provision of adequate data security, separate and apart from any express contracts concerning the goods or services provided, whereby Defendant was obligated to take reasonable steps to secure and safeguard that information.

18

87.     Defendant had an implied duty of good faith to ensure that the PII of Plaintiffs and Class Members in its possession was only used in accordance with its contractual obligations.

88.     Defendant was therefore required to act fairly, reasonably, and in good faith in carrying out its contractual obligations to protect the confidentiality of Plaintiffs' and Class Members' PII and to comply with industry standards and laws and regulations for the security of this information.

89.     Under these implied contracts for data security, Defendant was further obligated to provide Plaintiffs and all Class Members, with prompt and sufficient notice of any and all unauthorized access and/or theft of their PII.

90.     Plaintiffs and Class Members performed all conditions, covenants, obligations, and promises owed to Defendant, including paying for the products or services offered by Defendant, and/or providing the PII required by Defendant.

91.     Defendant breached implied contracts by failing to take adequate security measures to protect the confidentiality of Plaintiffs' and Class Members' PII, which resulted in the data breach.

92.     Further, on information and belief, Defendant has not provided Data Breach notifications to affected Class Members who may already be victims of identity fraud or theft or are at imminent risk of becoming victims of identity theft or fraud, associated with the PII that they provided to Defendant. These Class Members are unaware of the source of their compromised PII.

93.     The Data Breach was a reasonably foreseeable consequence of Defendant's actions in breach of these contracts.

94.     But for Defendant's conduct, Plaintiffs and Class Members did not receive the full benefit of the bargain, and instead received services that were of a diminished value as compared to the secure services they paid for. Plaintiffs and Class Members, therefore, were damaged in an amount at least equal to the difference in the value of the secure services they paid for and the services they received.

95.     No reasonable persons, including Plaintiffs or Class Members, would have provided Defendant with their PII if it had disclosed that its data security was inadequate or that it did not adhere to industry standard security.

96.     Plaintiffs and Class Members have suffered actual damages resulting from theft of their PII, loss of their PII, and remain at imminent risk of suffering additional future damages as a result of Defendant's breach.

97.     Due to Defendant's breach, Plaintiffs and Class Members have suffered actual damages from their attempt to mitigate the effect of the breach of implied contract and subsequent Data Breach, including, but not limited to, taking steps to protect themselves from the loss of their PII. Plaintiffs and Class Members have suffered actual identity theft and lost the ability to control their PII.

98.     Accordingly, Plaintiffs and Class Members have been injured as a result of Defendant's breach of implied contracts and are entitled to damages and/or restitution in an amount to be proven at trial.

## COUNT FOUR
### UNJUST ENRICHMENT

99.     Plaintiffs incorporate paragraphs 1 through 64, as if fully set forth herein.

100.    Plaintiffs and Class Members bring this Count in the alternative to the breach of implied contract count above.

101.    Plaintiffs and Class Members conferred a monetary benefit on Defendant in the form of monetary payments—directly or indirectly—for services received.

102.    Defendant collected, maintained, and stored the PII of Plaintiffs and Class Members and, as such, Defendant had knowledge of the monetary benefits conferred by Plaintiffs and Class Members.

103.    The money that Plaintiffs and Class Members paid to Defendant should have been used to pay, at least in part, for the administrative costs and implementation of adequate data

management and security. Defendant failed to implement—or adequately implement—practices, procedures, and programs to secure sensitive PII, as evidenced by the Data Breach.

104. As a result of Defendant's failure to implement security practices, procedures, and programs to secure sensitive PII, Plaintiffs and Class Members suffered actual damages in an amount equal to the difference in the value between goods and services with reasonable data privacy that Plaintiffs and Class Members paid for, and the services they received without reasonable data privacy.

105. Under principles of equity and good conscience, Defendant should not be permitted to retain money belonging to Plaintiffs and Class Members because Defendant failed to implement the data management and security measures that are mandated by industry standards and that Plaintiffs and Class Members paid for.

106. Defendant should be compelled to disgorge into a common fund for the benefit of Plaintiffs and the Class all unlawful or inequitable proceeds received by Defendant. A constructive trust should be imposed upon all unlawful and inequitable sums received by Defendant traceable to Plaintiffs and the Class.

## COUNT FIVE
### DECLARATORY JUDGMENT

107. Plaintiffs incorporate paragraphs 1 through 64, as if fully set forth herein.

108. Plaintiffs and the Class have stated claims against Defendant based on negligence, negligence per se, breach of implied contracts, unjust enrichment, and violations of several statutes.

109. Defendant failed to fulfill its obligation to provide adequate and reasonable security measures for the PII of Plaintiffs and the Class, as evidenced by the Data Breach.

110. Due to the Data Breach, Defendant's systems are more vulnerable to unauthorized access and require more stringent measures to be taken to safeguard the PII of Plaintiffs and the Class moving forward.

111.    An actual controversy has arisen in the wake of the Data Breach regarding Defendant's current obligations to provide reasonable data security to protect the PII of Plaintiffs and the Class. Defendant maintains that its security measures were—and still are—reasonably adequate and denies that it previously had or has any obligation to implement better safeguards to protect the PII of Plaintiffs and the Class.

112.    Plaintiffs seek a declaration that Defendant must implement specific additional, prudent industry standard security practices to provide reasonable protection and security to the PII of Plaintiffs and the Class. Specifically, Plaintiffs and the Class seek a declaration that Defendant's existing security measures do not comply with its obligations, and that Defendant must implement and maintain reasonable security measures to comply with its data security obligations.

**B.      Claims Brought on Behalf of the Washington Subclass**

**<u>COUNT SIX</u>**
**VIOLATION OF THE WASHINGTON CONSUMER PROTECTION ACT,**
**WASH. REV. CODE § 19.86.020, *et seq.***
**(On Behalf of Plaintiffs and the Washington Subclass)**

113.    Plaintiffs incorporate paragraphs 1 through 64, as if fully set forth herein.

114.    The Washington Consumer Protection Act, Wash. Rev. Code § 19.86.020, *et seq.* ("CPA"), protects both consumers and competitors by promoting fair competition in commercial markets for goods and services. To achieve that goal, the CPA prohibits any person from using "unfair methods of competition or unfair or deceptive acts or practices in the conduct of any trade or commerce[.]" Wash. Rev. Code § 19.86.020.

115.    As alleged herein, Defendant's policies and practices relating to its substandard security measures for the use and retention of consumers' personal information violates the CPA because they are both unfair and deceptive. Further, Defendant engaged in deceptive, unfair, and unlawful trade acts or practices in the conduct of trade or commerce, in violation of the CPA, including, but not limited to, the following:

A.  Defendant misrepresented and fraudulently advertised material facts pertaining to its services to the Class by representing and advertising that it would maintain

22

adequate data privacy and security practices and procedures to safeguard Class Members' PII  from unauthorized disclosure, release, data breaches, and theft;

B.  Defendant misrepresented material facts pertaining to its services to the Class by representing and advertising that it did and would comply with the requirements of relevant federal and state laws pertaining to the privacy and security of Class Members' PII;

C.  Defendant omitted, suppressed, and concealed the material fact of the inadequacy of the privacy and security protections for Plaintiffs and Class Members' PII;

D.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to maintain the privacy and security of Plaintiffs' and Class Members' PII, in violation of duties imposed by and public policies reflected in applicable federal and state laws, resulting in the Data Breach. These unfair acts and practices violated duties imposed by laws including the Federal Trade Commission Act (15 U.S.C. § 45);

E.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to disclose the Data Breach to Plaintiffs and the Class in a timely and accurate manner, contrary to the duties imposed by § 19.255.010(1);

F.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to have appropriate security safeguards or controls in place to prevent exploitation of vulnerabilities within its system that implicated the security of the PII of Plaintiffs and the Class;

G.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to encrypt the sensitive PII of Plaintiffs and the Class;

H.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to timely monitor and test its security measures in a manner sufficient to detect the unauthorized access and/or acquisition of the PII of Plaintiffs and the Class; and

I.  Defendant engaged in deceptive, unfair, and unlawful trade acts or practices by failing to take proper action following the Data Breach to enact adequate privacy and security measures and protect Plaintiffs' and the Class's PII from further unauthorized disclosure, release, data breaches, and theft.

116.    Defendant had statutory, regulatory, and common law obligations to prevent the foreseeable risk of harm to others, including Plaintiffs and the Class.

117.    It was foreseeable that the failure to use reasonable measures to protect the sensitive PII of Plaintiffs and the Class and to provide timely notice that a breach was detected if reasonable security measures were not taken, would put consumers, such as Plaintiffs and the Class at a serious risk of injury from the theft and fraudulent use of consumers' PII.

118.    As a direct and proximate result of Defendant's deceptive trade practices, Plaintiffs and the Class suffered injury and/or damages.

119.    The above unfair and deceptive practices and acts by Defendant were immoral, unethical, oppressive, and unscrupulous. These acts caused substantial injury to consumers that these consumers could not reasonably avoid; this substantial injury outweighed any benefits to consumers or to competition.

120.    Defendant knew or should have known that its computer systems and data security practices were inadequate to safeguard the PII of Plaintiffs and the Class and that risk of a data breach or theft was highly likely. Defendant's actions in engaging in the above-named unfair practices and deceptive acts were negligent, knowing and willful, and/or wanton and reckless with respect to the rights of Plaintiffs and the Class.

121.    Plaintiffs and the Class seek relief under Wash. Rev. Code § 19.86.090, including, but not limited to, actual damages, treble damages, injunctive relief, and attorneys' fees and costs.

## COUNT SEVEN
### VIOLATION OF THE WASHINGTON DATA BREACH STATUTE, WASH. REV. CODE § 19.255.010(1), *et seq.*
### (On Behalf of Plaintiffs and the Washington Subclass)

122.    Plaintiffs incorporate paragraphs 1 through 64, as if fully set forth herein.

123.    Under § 19.255.010, Defendant is required to accurately notify Plaintiffs and the Class following discovery or notification of the breach of their data security system (if personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured) in the most expedient time possible and without unreasonable delay under Wash. Rev. Code Ann. § 19.255.010(1).

124.    The Washington legislature, in passing § 19.255.010, recognized that data breaches of personal information, such as the Data Breach at issue here, can compromise financial security and be costly to consumers. The legislature intended to

> strengthen the data breach notification requirements to better safeguard personal information, prevent identity theft, and [. . .] provide consumers whose personal information has been jeopardized due to a data breach with the information needed to

secure financial accounts and make the necessary reports in a timely manner to minimize harm from identity theft.

Wash. Rev. Code Ann. § 19.255.010 [2015 c 64].

125. Defendant conducts business in Washington and owns or licenses computerized data that includes personal information as defined by Wash. Rev. Code Ann. § 19.255.010(1).

126. The PII of Plaintiffs and the Class includes personal information as covered under Wash. Rev. Code Ann. § 19.255.010(5).

127. Because Defendant discovered a breach of its security system (in which personal information was, or is reasonably believed to have been, acquired by an unauthorized person and the personal information was not secured), Defendant had an obligation to disclose the data breach in a timely and accurate fashion as mandated by Wash. Rev. Code Ann. § 19.255.010(1) and § 19.255.010(8).

128. As a direct and proximate result of Defendant's violations of Wash. Rev. Code Ann. § 19.255.010(1), Plaintiffs and the Class suffered damages, as described above.

129. Plaintiffs and the Class seek relief under Wash. Rev. Code Ann. §§ 19.255.010(10)(a), 19.255.010(10)(b) including, but not limited to, actual damages and injunctive relief.

## PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and on behalf of the proposed Class and Subclass, request that the Court:

a. Certify this case as a class action, appoint Plaintiffs as class representatives, and appoint Plaintiffs' Counsel as Class Counsel for Plaintiffs to represent the Class;

b. Find that Instructure breached its duty to safeguard and protect the PII of Plaintiffs and Class Members that was compromised in the Data Breach;

c. Award Plaintiffs and Class Members appropriate relief, including actual and statutory damages, restitution and disgorgement;

d. Award equitable, injunctive and declaratory relief as may be appropriate;

e. Award all costs, including experts' fees and attorneys' fees, and the costs of

prosecuting this action;

    f.      Award pre-judgment and post-judgment interest as prescribed by law; and

    g.      Grant additional legal or equitable relief as this Court may find just and proper.

### DEMAND FOR JURY TRIAL

Plaintiffs hereby demand a trial by jury on all issues so triable.

Dated: May 15, 2026

Respectfully submitted,

By: */s/ Jason L. Lichtman*
Jason L. Lichtman (Utah Bar No. 18770)
Michael J. Miarmi*
John D. Maher*
**LIEFF CABRASER HEIMANN &
BERNSTEIN, LLP**
250 Hudson Street, 8th Floor
New York, NY 10013-1413
Tel.: (212) 355-9500
Fax: (212) 355-9592
Email: jlichtman@lchb.com
Email: mmiarmi@lchb.com
Email: jmaher@lchb.com

Thomas E. Loeser*
Karin B. Swope*
Ellen J. Wen*
**COTCHETT, PITRE & McCARTHY LLP**
1809 7th Ave., Ste. 1610
Seattle, WA 98101
Tel: 206-802-1272
Fax: 206-299-4184
tloeser@cpmlegal.com
kswope@cpmlegal.com
ewen@cpmlegal.com

***Pro Hac Vice Forthcoming***

*Attorneys for Plaintiffs and the proposed Classes*